IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                                            No. CR S-08-0263 FCD

    vs.

CHARLES BARKSDALE,

    Defendant.                                          ORDER

_____/

        Defendant's request for bail review came on for hearing on June 25, 2008, and was continued on the court's own motion to June 26, 2008. Assistant United States Attorney Matthew D. Segal appeared for the government; Pat Hanley, retained counsel, appeared for defendant, who was present in custody. As explained below, this order declines to modify – save for one clarification – the essential terms of the release order issued by Magistrate Judge Drozd on June 9, 2008, based on the information presently before the court.

I. <u>Background</u>

        Defendant was temporarily detained upon his first appearance in court on June 2, 2008, following his arrest on allegations of bank fraud contained in a criminal complaint filed

1

May 30, 2008.¹  Following a full detention hearing on June 9, 2008, Magistrate Judge Drozd ordered defendant released on a $250,000 collateral bond, secured by the posting of the defendant's aunt's property, as well as special pretrial release conditions.

At the initial bail review hearing on June 25, 2008, the government opposed reopening the detention hearing.²  The court deemed the hearing reopened, finding that sufficient new information had been presented to support a reopening.  At the continued hearing on January 26, 2008, in response to continuing objections from the government, the court confirmed its determination that new information material to the question of the release conditions previously imposed, or the continuing propriety of release, supported the hearing's reopening.

II. New Information Justifying Reopening

A detention hearing may be reopened if the party requesting reopening presents "new information." 18 U.S.C. 3142(f) (hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community"); United States v. Flores, 856 F. Supp. 1400, 1405-07 (E.D. Cal. 1994).

The new information justifying the reopening of the detention hearing in this case is the unavailability of $250,000 in equity in the aunt's property to secure the collateral bond required by Judge Drozd.  Defense counsel represents that while the estimated amount of equity was provided in good faith, an appraisal taking account of the current real estate market shows only $65,000 in equity available.  Moreover, the aunt had not understood she would not be able to post her equity until a refinancing she has undertaken is completed.  According to counsel, she

---

¹ An indictment filed June 11, 2008, charges defendant with one count of bank fraud under 18 U.S.C. § 1344.

² Before proceeding to hear the arguments of counsel, the undersigned confirmed with Judge Drozd that he was not ordering the bail review matter be set before him; rather he indicated it should proceed as a matter for consideration by the duty magistrate judge.

remains willing to post all equity available in her home, whatever the amount. While government counsel protested that the change in the defendant's story regarding the aunt's property suggested some impropriety, he did not present information supporting a conclusion that the aunt has acted in bad faith.

In light of the change in amount of equity available from the aunt, defense counsel has offered additional equity in two other properties, arguing that this other equity can be substituted to achieve the same result intended by the original release order.

The new information regarding the aunt's property and the availability of alternate equity to secure a bond is material to the question of whether the release granted by Judge Drozd can be confirmed, and if so on what modified terms.[3]

III. Summary of Information Presented

A. Amount of Equity Available

As noted, defense counsel represents that an appraisal taking account of the value of the aunt's home in the current real estate market shows $65,000 in equity available. The government does not contest this figure, although it reserves the right to review the documentation demonstrating this dollar amount is correct. The government appears to concede that whatever equity the aunt is able to post could make up a portion of a package of collateral to secure a bond.

The defense also proffers the equity in a home owned by a friend of the defendant, a Ms. Morris. This home is valued at $200,000 and apparently is unencumbered; it is co-owned

---

[3] Once a hearing is reopened, it is this court's position that it is reopened for the purpose of the court's receiving any information, within reason, not submitted at the original detention hearing. The purpose of such a rule is to allow the new information justifying reopening to be considered in context, taking into account information either side may have gathered. Any information presented is of course subject to the court's own weighing of the evidence in light of all relevant factors, including the timing of its disclosure.

by Ms. Morris and her father; the father suffers from dementia and lives in a care facility. Ms. Morris is a trustee for her father and has the ability to effect a posting of the home on her own.[4]

The defense also proffers an estimated $167,500 equity in the home of another friend, Ms. Dawson. At the time of the hearing on June 26, the court's pretrial services officer had been unable to confirm Ms. Dawson's willingness to act as a surety. When asked if a bond secured by the equity in the aunt's property and the equity in Ms. Dawson's property would be an acceptable alternative, the government's counsel indicated he thought such a package would warrant consideration. Following the hearing, during which defense counsel volunteered that pretrial services was welcome to contact Ms. Dawson, the officer did in fact talk with her on June 30, 2008. The pretrial services officer has reported to the court that, after he reviewed the responsibilities of a surety with her, Ms. Dawson told him she is not willing to post the equity in her property to secure defendant's appearance at future court appearances.

IV. Analysis

Given that the aunt's eligibility to act as a surety previously was approved by Judge Drozd, and no new information calls it into question, the court concludes that any equity available in her property following her refinancing is appropriately part of a package of collateral to secure a bond.

Given Ms. Morris's obligations to her ailing father, which she has voluntarily disclosed, the court is not prepared to place Ms. Morris in a position of putting at risk an important asset, at least half of which could be used to fund her father's need in the future. It is not feasible to have Ms. Morris post only her half of the equity in the house, for if the equity needed to be forfeited in the event of defendant's violation of pretrial release conditions, the entire house would need to be sold. Nothing in the record suggests Ms. Morris has the liquidity

---

[4] Based on a document provided by the government's counsel, it appears Ms. Morris has a lengthy rap sheet. Given the court's resolution of the pending bail review motion, it need not reach the question of the relevance of Ms. Morris's criminal history to her potentially acting as a surety.

to otherwise cover a bond in the amount of $100,000. Even if she did, an additional $100,000, when combined with the equity in the aunt's home, would not approach the required bond amount, appropriately set by Judge Drozd at $250,000.

Although the court would have entertained releasing defendant on collateral bond secured by $65,000 equity in his aunt's property and $167,500 equity in Ms. Dawson's property, for a total bond of $232,500, Ms. Dawson's unwillingness to act as a surety moots this option.[5]

V. Conclusion

Based on the foregoing, the essential terms of Judge Drozd's release order are confirmed, with the clarification that the security to back a collateral bond in the amount of $250,000, or an amount very close thereto, need not be made up entirely of equity in the name of defendant's aunt, but may be supplemented by alternate security offered by someone who qualifies as an appropriate surety. Defendant's motion for bail review is otherwise denied.

DATED: July 1, 2008.

_____
U.S. MAGISTRATE JUDGE

barksdale.bailreview

---

[5] The court's conclusion also moots defense counsel's request to cross-examine sureties, which the court understands was made with respect to Ms. Morris and Ms. Dawson. See Nebbia v. United States, 357 F.2d 303 (2nd Cir. 1966).